**SMITH RIDDLES LLP**
Perry G. Smith, Bar No. 210402
psmith@smithriddles.com
Danielle N. Riddles, Bar No. 298735
driddles@smithriddles.com
2601 Main Street, Suite 500
Irvine, California 92614
Phone: (949) 365-4444

Attorneys for Plaintiff
BARBARA BARREDA

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA BARREDA, an individual,<br><br>    Plaintiff,<br><br>  vs.<br><br>THE ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES, a California corporation sole; and<br>DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 8:25-cv-2706<br><br>**COMPLAINT FOR DAMAGES FOR:**<br><br>**(1) FAILURE TO REASONABLY ACCOMMODATE DISABILITY (42 U.S.C. § 12112(b));**<br><br>**(2) DISABILITY DISCRIMINATION (42 U.S.C. § 12112(a));**<br><br>**(3) INTERFERENCE WITH ADA RIGHTS (42 U.S.C. § 12203(b)); AND**<br><br>**(4) RETALIATION (42 U.S.C. § 12203(a))** |

Plaintiff Barbara Barreda (hereinafter "Plaintiff" or "Barreda") alleges as follows:

## INTRODUCTION

1. Plaintiff Barbara Barreda (hereinafter "Plaintiff" or "Barreda") brings this action against defendants The Roman Catholic Archbishop of Los Angeles ("Defendant") and Does 1-10 for disability-related claims under the Americans with Disabilities Act.

1

<b>COMPLAINT</b>

2.     Barreda began working for Defendant in 2019, providing administrative oversight and operational support to elementary schools. Barreda suffered what was believed to be a simple right ankle fracture in 2024 and was set to recover without the need for surgery. Defendant allowed Barreda to work remotely for over two months while she recovered, thereafter returning to in-person work wearing a walking boot. However, ongoing pain revealed that Barreda's ankle had not healed properly and that she had breaks in both her tibia and fibula. Surgery was required to address the multiple breaks and failure to heal. Barreda worked up until her surgery and kept Defendant informed of her status and need for a medical leave of absence for continued treatment and recovery. Defendant neither allowed Barreda to return remotely nor interacted with her regarding other potential accommodations, instead terminated Barreda's employment after her doctor cleared her to return. Defendant could have, and should have, allowed Barreda to return to work remotely as it had multiple times before or extended her medical leave for a mere two weeks, especially as Defendant was closed for one of those weeks, allowing her to return to work in a hybrid capacity for a one-month period.

## PARTIES

3.     *Plaintiff Barbara Barreda* is an individual residing in Orange County, California, in the Central District of California and at all times relevant herein, Plaintiff was a citizen of the State of California.

4.     *Defendant The Roman Catholic Archbishop of Los Angeles*: Plaintiff is informed and believes and thereon alleges that defendant The Roman Catholic Archbishop of Los Angeles (hereinafter "Defendant") is, and at all times relevant herein was, a California corporation sole authorized to conduct its activities in, and conducting its activities in, Los Angeles County, California. Defendant's principal place of business is in Los Angeles, California. Defendant's officers, including its Archbishop Jose Gomez, are located in Los Angeles, California. At all times herein mentioned prior to Plaintiff's termination, Defendant was Plaintiff's employer.

5.     *Defendants Does 1-10*: Plaintiff is unaware of the true names and capacities of defendants Does 1 through 10, inclusive, and therefore Plaintiff sues these defendants by fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named defendants is in

1  some manner responsible for the damage to Plaintiff as alleged in this Complaint. Plaintiff will amend

2  this Complaint to show the true names and capacities of these fictitiously named defendants after their

3  true names and capacities have been ascertained.

4      6.  *Ratification allegations*: All the acts and conduct, herein and below, described of each

5  corporate defendant, whether specifically named and/or designated herein as Doe, was duly authorized,

6  ordered, and ratified by its owner, managing partner, director, officer, and managing agent. Plaintiff is

7  informed and believes, and at all times herein mentioned, that Regional Superintendent for San Pedro

8  Pastoral Region Thomas Gasper, Human Resources Director Annabelle Baltierra, Senior Director and

9  Superintendent of Catholic Schools Paul Escala, and Regional Superintendent Veronica Zozaya were

10  managing agents of Defendant, had broad discretionary powers, exercised substantial independent

11  authority and judgment in their corporate decision making so that their decisions ultimately determined

12  policies, had the ability to make and implement adverse employment decisions, and were acting in their

13  capacity as managing agents when engaging in the conduct described herein.

14

15  ## ALTER EGO, AGENCY, AND JOINT EMPLOYER

16      7.  Plaintiff is informed and believes that, at all times herein mentioned, each of the

17  defendants, including the fictitious Doe defendants, was the agent, successor, alter ego, wholly owned

18  subsidiary, and/or employee of each of the remaining defendants and in doing the things mentioned herein

19  was acting within the scope of such relationship.

20      8.  Plaintiff is informed and believes that, at all times herein mentioned, there existed such a

21  unity of interest and ownership between Defendant and the fictitious Doe defendants that the individuality

22  and separateness of defendants have ceased to exist and despite the formation of purported corporate

23  existence, Defendant and the fictitious Doe defendants are, in reality, one in the same.

24      9.  Plaintiff is informed and believes that Defendant and the fictitious Doe defendants are

25  Plaintiff's joint employers by virtue of a joint enterprise and that Plaintiff was an employee of Defendant

26  and the fictitious Doe defendants. Plaintiff performed services for every one of the defendants and to the

27  mutual benefit of all defendants, and all defendants shared control of Plaintiff as an employee, either

28  directly or indirectly, and the way the defendants' business was and is conducted.

SMITH RIDDLES | LLP

**JURISDICTION AND VENUE**

10.    This Court has jurisdiction over the subject matter under 28 U.S.C. § 1331 since this case arises under federal law, including the Americans with Disabilities Act ("ADA"). This Court also has jurisdiction under 28 U.S.C. § 1343 because Plaintiff is a citizen of California and seeks damages for violation of her civil rights. The amount in controversy exceeds the minimum jurisdiction of this Court.

11.    Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in this District, including the acts of discrimination. Among other things, Defendant employed Plaintiff and others in this District. All acts described herein occurred in the County of Los Angeles, State of California.

12.    Plaintiff claims economic and emotional distress damages in a sum in excess of the jurisdictional minimum of this Court. Plaintiff also requests punitive damages against Defendant in the sums in excess of the jurisdictional minimum of this Court.

**GENERAL FACTUAL ALLEGATIONS**

13.    Barreda began working for The Roman Catholic Archbishop of Los Angeles as an Assistant Superintendent on or about August 26, 2019. After a reorganization, Barreda's job title changed to Assistant Superintendent for the San Pedro Pastoral Region.

14.    As an Assistant Superintendent, Barreda's job duties included providing administrative oversight and operational support to elementary schools and high schools, which included, without limitation, working with school principals and monitoring and providing guidance and training related to financial and budgetary matters, academic testing results, personnel matters, and general policies and procedures. Barreda competently performed her job duties during her employment with Defendant.

15.    In or about January 2024, Barreda suffered a serious right ankle fracture that significantly limited her ability to walk, stand, and drive.

16.    On January 5, 2024, Barreda emailed her supervisor Thomas Gasper ("Gasper"), Regional Superintendent for San Pedro Pastoral Region, describing the issues she was facing because of her fractured ankle, including getting dressed and mobility challenges. Barreda provided two doctor's notes dated January 4, 2024. The first placed her off work for a right ankle fracture until January 11, 2024, at

which point she could work remotely. The second confirmed that beginning March 25, 2024, Barreda could work a hybrid schedule with half her time spent in person and the other half remote.

17.    Barreda returned to work on January 11, 2024, as scheduled. She worked fully remotely without issue, just as she did during the COVID pandemic.

18.    In early February 2024, Barreda's cast was removed and replaced with a walking boot. She began physical therapy later that month.

19.    On or about March 14, 2024, Defendant gave Barreda her "2024 Performance Review Non-Management," which described her role a bit differently than it had been described in the past. Defendant further targeted Barreda's need for reasonable accommodation related to her disabling condition, listing as an area of development that "*[s]chools would benefit from [Barreda] being more proactive to be on campuses more regularly throughout the year to meet with principals, personnel, and pastors*[.]"

20.    Barreda began working a hybrid schedule on or about March 25, 2024, as scheduled.

21.    Barreda experienced persistent pain in her ankle, limiting her ability to walk and carry out everyday activities. Barreda had additional testing in or about July 2024, which confirmed that she had not one but two broken bones, including a nonunion fracture that would not heal on its own, requiring surgery.

22.    Barreda emailed Defendant, including her supervisors Senior Director and Superintendent of Catholic Schools Paul Escala ("Escala") and Regional Superintendent Veronica Zozaya ("Zozaya"), outlining the history of her broken ankle, the newly discovered second broken bone, and her scheduled August 22, 2024 surgery. Barreda continued working up until her surgery date.

23.    Barreda submitted a Leave of Absence Request and medical notes confirming her surgery on August 22, 2024, and her need for leave until December 2024. Defendant processed Barreda's leave of absence under its Family and Medical Leave Act ("FMLA") policy.

24.    On or about November 4, 2024, Barreda had a phone call with Leave of Absence/Wellness Administrator Eimy Ayala ("Ayala") regarding her leave of absence. Ayala stated that Defendant allowed for sixteen weeks of FMLA leave instead of twelve weeks, which is confirmed in Defendant's policies. After that, Barreda "*would be on a personal leave and [her] job might not be protected.*"

25.    On December 9, 2024, Barreda emailed Ayala that her doctor approved her to return to work remotely beginning on December 16, 2024, with a gradual return to in person work. Ayala stated that she would "*need to have a conversation with [Barreda's] supervisor [Zozaya] and Paul [Escala] to see if they are willing to accommodate this request*."

26.    On December 9, 2024, Barreda provided Defendant her doctor's note allowing Barreda to return to work on December 16, 2024, and work fully remotely until December 31, 2024, which was a request for five days of remote work because Defendant was closed from approximately December 23, 2024, until January 2, 2025, for the holidays. Following December 31, 2024, Barreda would gradually return to in person work starting with 40% in-person and 60% remote work, progressing to full in-person work by January 31, 2025. Alaya confirmed receipt and stated that she "*will be reviewing it with Paul [Escala].*"

27.    Barreda followed up with Defendant regarding her ability to return to work on December 16, 2024. Alaya stated she was "*waiting to hear back from Paul [Escala] and Veronica [Zozaya] on their decision regarding [Barreda's] accommodations.*"

28.    Having not heard back, Defendant prevented Barreda from returning to work on December 16, 2024, as scheduled. Instead, Alaya emailed Barreda on December 16, 2024, requesting an in-person meeting for December 18th "*to discuss the most recent doctor's note*" and to "*go over [Barreda's] options.*"

29.    Due to Barreda's mobility limitations, she requested the meeting be conducted via Zoom and asked whether her direct supervisors, Escala and Zozaya, would participate in what she understood should be an interactive process discussion. Ayala responded that the "*meeting is with HR only to discuss [Barreda's] leave, which is part of the process.*"

30.    On December 18, 2024, Barreda attended the scheduled Zoom meeting with Ayala and Human Resources Director Annabelle Baltierra ("Baltierra"), who was also on notice of Barreda's disabilities and need for accommodations. Ayala went over the history of Barreda's medical leave and that Barreda's protected leave expired, to which Barreda responded that she was returning to work. Baltierra said, "*We talked to your direct supervisors, and we have decided to no longer hold your position*

*for you*." Barreda said that she was already able to return to work and has not had any conversations with her supervisors about her requested accommodations.

31. Defendant sent Barreda a Notice to Employee as to Change in Relationship confirming her "Involuntary Termination effective 12/20/2024."

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

32. Plaintiff timely filed a Complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant and received a right to sue and, thereby, exhausted her administrative remedies with regard to each cause of action below requiring such exhaustion. Plaintiff, therefore, timely files this action.

## FIRST CAUSE OF ACTION

### Failure to Accommodate Known and Perceived Disability - 42 U.S.C. § 12112(b)

### (Against Defendant and Does 1-10)

33. Plaintiff realleges and incorporates by reference all foregoing paragraphs as though fully set forth in this cause of action.

34. At all times mentioned in this Complaint, section 12101 was in full force and effect and binding on Defendant. An employer must provide its disabled employees, including employees whom it regarded as being disabled, with reasonable accommodation and may be required to engage in an interactive process with an employee who needs reasonable accommodation. 42 U.S.C. § 12112(b)(5)(A).

35. Defendant is subject to suit under the ADA in that Defendant employed more than fifteen employees and is an employer within the meaning of ADA. 42 U.S.C. § 12111(5).

36. At all times mentioned herein, Plaintiff was an employee as the term is defined within the ADA and entitled to protection under the ADA as a qualified individual with a disability and/or regarded as being disabled who was able to perform the essential functions of her position with reasonable accommodation.

SMITH RIDDLES | LLP

37.    Plaintiff was willing to participate, and did do her part in participating, in an interactive process to determine whether reasonable accommodation could be made.

38.    Defendant failed to provide Plaintiff with reasonable accommodations for her known and/or perceived disabilities, in violation of the ADA, by failing to engage in a reasonable, timely, good faith interactive process to determine whether reasonable accommodation could be made and by terminating Plaintiff because of her need for and request for accommodations, including remote work requirements and medical leave to treat her known disabilities. Additionally, Defendant failed to provide Plaintiff with a reasonable accommodation for what it regarded as Plaintiff's disability, in violation of the ADA, by terminating Plaintiff because of her need for and request for accommodations to treat what it regarded as her disabilities, because of Plaintiff's record of disabilities, and because of its perception that Plaintiff's condition would cause need for further leave or accommodation.

39.    In failing to engage in a good faith interactive process and failing to accommodate Plaintiff's disability and what it regarded as Plaintiff's disability, Defendant violated the ADA.

40.    As a direct and/or proximate result of Defendant's conduct described and incorporated into this cause of action, Plaintiff has suffered, and continues to suffer, economic damages in an amount to be proven at trial, which include, but are not limited to, back pay and front pay, but in excess of the jurisdictional limits of this Court.

41.    As a further direct and/or proximate result of Defendant's conduct described and incorporated into this cause of action, Plaintiff has suffered and continues to suffer severe, substantial, and enduring mental and emotional distress, emotional pain, suffering, inconvenience, humiliation, embarrassment, regret, mental anguish, and other non-pecuniary losses in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

42.    Defendant's aforementioned actions, and failures to act as described herein, were done intentionally, willfully, and maliciously and in reckless disregard of Plaintiff's rights with the intent, design, and purpose of injuring her, as Defendant anticipated that Plaintiff would suffer damages in the foreseeable future. Defendant was well aware of the rights the ADA afforded to Plaintiff, including the right not to be discriminated against because of her disabilities, the right to have Defendant reasonably accommodate her disabilities, the right to engage in the interactive process with Defendant, the right not

to be retaliated against because of her disabilities or her request for reasonable accommodation, and the right to not be terminated due to her disabilities, perceived disabilities, or requests for reasonable accommodation. Defendant's malicious, intentional, and willful conduct includes, without limitation, giving Plaintiff false information regarding her rights to accommodation in violation of its own handbook, refusing to interact with her regarding her requests for accommodation, shutting down Plaintiff when she attempted to assert her rights, applying an inflexible policy that only applied to Plaintiff's employment with Defendant, refusing to grant a reasonable hybrid work from home accommodation that it had previously granted in an effort to force Plaintiff to return to work against doctor's orders, and giving Plaintiff a negative performance review regarding her inability to work in-person as a result of her disabilities and need for accommodations in an attempt to coerce her to violate her doctor's orders in contrast to her rights. Defendant, through its officers, managing agents, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct listed above. Defendant's conduct listed above was intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's rights under 42 U.S.C. § 12117. Accordingly, Plaintiff prays for punitive damages in an amount appropriate to punish Defendant and to make an example of Defendant to the community.

43.    As a result of Defendant's unlawful conduct as described and incorporated into this cause of action, and Plaintiff's enforcement of the law prohibiting such conduct, Plaintiff has incurred and continues to incur costs and attorneys' fees, and Plaintiff prays for costs of suit and reasonable attorneys' fees under 42 U.S.C. § 12205.

**SECOND CAUSE OF ACTION**

**Disability Discrimination - 42 U.S.C. § 12112(a)**

**(Against Defendant and Does 1-10)**

44.    Plaintiff realleges and incorporates by reference all foregoing paragraphs as though fully set forth in this cause of action.

45.    At all times mentioned in this Complaint, section 12101 was in full force and effect and binding on Defendant. Employers are prohibited from discriminating against, terminating, or otherwise

interfering with the employment privileges of qualified individuals on the basis of their disabilities, record of disabilities, or what the employer regarded as their disabilities. 42 U.S.C. § 12112(a).

46.    Defendant is subject to suit under the ADA in that Defendant employed more than fifteen employees and is an employer within the meaning of ADA. 42 U.S.C. § 12111(5).

47.    At all times mentioned herein, Plaintiff was an employee as the term is defined within the ADA and entitled to protection under the ADA as a qualified individual with a disability and/or regarded as being disabled who was able to perform the essential functions of her position with reasonable accommodation.

48.    By the conduct and failures to act described and incorporated in this cause of action, Defendant knew of Plaintiff's disabilities, discriminated against Plaintiff on the basis of her known and/or perceived disabilities, including its perception that she would require future accommodation as a result of her disabilities, failed to provide Plaintiff with reasonable accommodation for her disabilities, and terminated Plaintiff because of her known and/or perceived disabilities and request for reasonable accommodation in violation of the ADA. Additionally, Defendant regarded Plaintiff as having disabilities, discriminated against Plaintiff on the basis of it regarding her as having disabilities, discriminated against Plaintiff on the basis of Plaintiff requesting reasonable accommodation, discriminated against Plaintiff because of her record and history of disabilities, and terminated Plaintiff because it regarded her as having disabilities and its perception that Plaintiff's known and/or perceived disabilities would cause need for future reasonable leave or accommodation, in violation of the ADA.

49.    As a direct and/or proximate result of Defendant's conduct described and incorporated into this cause of action, Plaintiff has suffered, and continues to suffer, economic damages in an amount to be proven at trial, which include, but are not limited to, back pay and front pay, but in excess of the jurisdictional limits of this Court.

50.    As a further direct and/or proximate result of Defendant's conduct described and incorporated into this cause of action, Plaintiff has suffered and continues to suffer severe, substantial, and enduring mental and emotional distress, emotional pain, suffering, inconvenience, humiliation, embarrassment, regret, mental anguish, and other non-pecuniary losses in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

51. Defendant's aforementioned actions, and failures to act as described herein, were done intentionally, willfully, and maliciously and in reckless disregard of Plaintiff's rights with the intent, design, and purpose of injuring her, as Defendant anticipated that Plaintiff would suffer damages in the foreseeable future. Defendant was well aware of the rights the ADA afforded to Plaintiff, including the right not to be discriminated against because of her disabilities, the right to have Defendant reasonably accommodate her disabilities, the right to engage in the interactive process with Defendant, the right not to be retaliated against because of her disabilities or her request for reasonable accommodation, and the right to not be terminated due to her disabilities, perceived disabilities, or requests for reasonable accommodation. Defendant's malicious, intentional, and willful conduct includes, without limitation, giving Plaintiff false information regarding her rights to accommodation in violation of its own handbook, refusing to interact with her regarding her requests for accommodation, shutting down Plaintiff when she attempted to assert her rights, applying an inflexible policy that only applied to Plaintiff's employment with Defendant, refusing to grant a reasonable hybrid work from home accommodation that it had previously granted in an effort to force Plaintiff to return to work against doctor's orders, and giving Plaintiff a negative performance review regarding her inability to work in-person as a result of her disabilities and need for accommodations in an attempt to coerce her to violate her doctor's orders in contrast to her rights. Defendant, through its officers, managing agents, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct listed above. Defendant's conduct listed above was intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's rights under 42 U.S.C. § 12117. Accordingly, Plaintiff prays for punitive damages in an amount appropriate to punish Defendant and to make an example of Defendant to the community.

52. As a result of Defendant's unlawful conduct as described and incorporated into this cause of action, and Plaintiff's enforcement of the law prohibiting such conduct, Plaintiff has incurred and continues to incur costs and attorneys' fees, and Plaintiff prays for costs of suit and reasonable attorneys' fees under 42 U.S.C. § 12205.

### THIRD CAUSE OF ACTION

### Interference with ADA Rights - 42 U.S.C. § 12203(b)

### (Against Defendant and Does 1-10)

53.    Plaintiff realleges and incorporates by reference all foregoing paragraphs as though fully set forth in this cause of action.

54.    At all times mentioned in this Complaint, section 12101 was in full force and effect and binding on Defendant. The ADA prohibits employers from interfering with an employee's exercise of any rights under the ADA, including through intimidation or threats. 42 U.S.C. § 12203(b).

55.    Defendant is subject to suit under the ADA in that Defendant employed more than fifteen employees and is an employer within the meaning of ADA. 42 U.S.C. § 12111(5).

56.    At all times mentioned herein, Plaintiff was an employee as the term is defined within the ADA and entitled to protection under the ADA as a qualified individual with a disability and/or regarded as being disabled who was able to perform the essential functions of her position with reasonable accommodation.

57.    Defendant interfered with Plaintiff's rights under the ADA by its aforementioned actions and/or failures to act, including, but not limited to, failing to comply with its own policies to limit Plaintiff's ADA rights, implementing an inflexible policy that only applied to Plaintiff's employment, refusing to grant a reasonable hybrid work from home accommodation that it had previously granted in an effort to force Plaintiff to return to in-person work against doctor's orders, shutting down Plaintiff when she tried to assert her ADA rights, refusing to participate in the required interactive process regarding Plaintiff's requested accommodations to reach its desired outcome of failing to locate a reasonable accommodation, withholding information regarding Plaintiff's rights under the ADA, and giving Plaintiff a negative performance review regarding her inability to work in-person as a result of her disabilities and need for accommodations in an attempt to coerce her to violate her doctor's orders in contrast to her rights.

58.    As a direct and/or proximate result of Defendant's conduct described and incorporated into this cause of action, Plaintiff has suffered, and continues to suffer, economic damages in an amount

SMITH RIDDLES | LLP

to be proven at trial, which include, but are not limited to, back pay and front pay, but in excess of the jurisdictional limits of this Court.

59.     As a further direct and/or proximate result of Defendant's conduct described and incorporated into this cause of action, Plaintiff has suffered and continues to suffer severe, substantial, and enduring mental and emotional distress, emotional pain, suffering, inconvenience, humiliation, embarrassment, regret, mental anguish, and other non-pecuniary losses in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

60.     Defendant's aforementioned actions, and failures to act as described herein, were done intentionally, willfully, and maliciously and in reckless disregard of Plaintiff's rights with the intent, design, and purpose of injuring her, as Defendant anticipated that Plaintiff would suffer damages in the foreseeable future. Defendant was well aware of the rights the ADA afforded to Plaintiff, including the right not to be discriminated against because of her disabilities, the right to have Defendant reasonably accommodate her disabilities, the right to engage in the interactive process with Defendant, the right not to be retaliated against because of her disabilities or her request for reasonable accommodation, and the right to not be terminated due to her disabilities, perceived disabilities, or requests for reasonable accommodation. Defendant's malicious, intentional, and willful conduct includes, without limitation, giving Plaintiff false information regarding her rights to accommodation in violation of its own handbook, refusing to interact with her regarding her requests for accommodation, shutting down Plaintiff when she attempted to assert her rights, applying an inflexible policy that only applied to Plaintiff's employment with Defendant, refusing to grant a reasonable hybrid work from home accommodation that it had previously granted in an effort to force Plaintiff to return to work against doctor's orders, and giving Plaintiff a negative performance review regarding her inability to work in-person as a result of her disabilities and need for accommodations in an attempt to coerce her to violate her doctor's orders in contrast to her rights. Defendant, through its officers, managing agents, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct listed above. Defendant's conduct listed above was intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's rights under 42 U.S.C. § 12117. Accordingly, Plaintiff prays for punitive damages in an amount appropriate to punish Defendant and to make an example of Defendant to the community.

**COMPLAINT**

61.    As a result of Defendant's unlawful conduct as described and incorporated into this cause of action, and Plaintiff's enforcement of the law prohibiting such conduct, Plaintiff has incurred and continues to incur costs and attorneys' fees, and Plaintiff prays for costs of suit and reasonable attorneys' fees under 42 U.S.C. § 12205.

## FOURTH CAUSE OF ACTION

### Retaliation - 42 U.S.C. § 12203(a)

### (Against Defendant and Does 1-10)

62.    Plaintiff realleges and incorporates by reference all foregoing paragraphs as though fully set forth in this cause of action.

63.    At all times mentioned in this Complaint, section 12101 was in full force and effect and binding on Defendant. The ADA prohibits employers from retaliating against any employee who opposes any practices forbidden under the ADA. 42 U.S.C. 12203(a).

64.    Defendant is subject to suit under the ADA in that Defendant employed more than fifteen employees and is an employer within the meaning of ADA. 42 U.S.C. § 12111(5).

65.    At all times mentioned herein, Plaintiff was an employee as the term is defined within the ADA and entitled to protection from retaliation under the ADA as a qualified individual with a disability who required reasonable accommodation and opposed practices forbidden under the ADA.

66.    Defendant retaliated against Plaintiff because she engaged in protected activities, such as exercising her ADA rights, requesting that her supervisors participate in the interactive process, and requesting accommodations, including a medical leave of absence to treat her known and/or perceived disabilities. Defendant retaliated against Plaintiff because she engaged in protected activities by taking adverse action against her, including the termination of her employment, by refusing to provide reasonable accommodations, refusing to engage in a good-faith interactive process with Plaintiff, and applying unlawful policies to Plaintiff. Defendant further retaliated against Plaintiff because of her status as a qualified individual with a disability and its belief that Plaintiff's disabilities would require future need for accommodation.

67.     As a direct and/or proximate result of Defendant's conduct described and incorporated into this cause of action, Plaintiff has suffered, and continues to suffer, economic damages in an amount to be proven at trial, which include, but are not limited to, back pay and front pay, but in excess of the jurisdictional limits of this Court.

68.     As a further direct and/or proximate result of Defendant's conduct described and incorporated into this cause of action, Plaintiff has suffered and continues to suffer severe, substantial, and enduring mental and emotional distress, emotional pain, suffering, inconvenience, humiliation, embarrassment, regret, mental anguish, and other non-pecuniary losses in excess of the jurisdictional limits of this Court, all in an amount to be proved at trial.

69.     Defendant's aforementioned actions, and failures to act as described herein, were done intentionally, willfully, and maliciously and in reckless disregard of Plaintiff's rights with the intent, design, and purpose of injuring her, as Defendant anticipated that Plaintiff would suffer damages in the foreseeable future. Defendant was well aware of the rights the ADA afforded to Plaintiff, including the right not to be discriminated against because of her disabilities, the right to have Defendant reasonably accommodate her disabilities, the right to engage in the interactive process with Defendant, the right not to be retaliated against because of her disabilities or her request for reasonable accommodation, and the right to not be terminated due to her disabilities, perceived disabilities, or requests for reasonable accommodation. Defendant's malicious, intentional, and willful conduct includes, without limitation, giving Plaintiff false information regarding her rights to accommodation in violation of its own handbook, refusing to interact with her regarding her requests for accommodation, shutting down Plaintiff when she attempted to assert her rights, applying an inflexible policy that only applied to Plaintiff's employment with Defendant, refusing to grant a reasonable hybrid work from home accommodation that it had previously granted in an effort to force Plaintiff to return to work against doctor's orders, and giving Plaintiff a negative performance review regarding her inability to work in-person as a result of her disabilities and need for accommodations in an attempt to coerce her to violate her doctor's orders in contrast to her rights. Defendant, through its officers, managing agents, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct listed above. Defendant's conduct listed above was intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's

rights under 42 U.S.C. § 12117. Accordingly, Plaintiff prays for punitive damages in an amount appropriate to punish Defendant and to make an example of Defendant to the community.

70.    As a result of Defendant's unlawful conduct as described and incorporated into this cause of action, and Plaintiff's enforcement of the law prohibiting such conduct, Plaintiff has incurred and continues to incur costs and attorneys' fees, and Plaintiff prays for costs of suit and reasonable attorneys' fees under 42 U.S.C. § 12205.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against The Roman Catholic Archbishop of Los Angeles as follows:

1.    For lost income and other economic damages on all causes of action, in an amount according to proof at the time of trial;

2.    For emotional distress and pain and suffering on all causes of action that allow for such recovery;

3.    For punitive damages in an amount according to proof at the time of trial, on all causes of action that allow for such recovery;

4.    For compensatory damages on all causes of action, in an amount to be proven at trial;

5.    For attorneys' fees;

6.    For costs of suit incurred herein; and

7.    For such other relief as may be just and proper.

DATED: December 4, 2025                    **SMITH RIDDLES LLP**

By: _Danielle Riddles_____
      Danielle N. Riddles

Attorney for Plaintiff
BARBARA BARREDA

16
**COMPLAINT**

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Barbara Barreda hereby demands a jury trial on all causes of action set forth in this Complaint.

DATED: December 4, 2025                              **SMITH RIDDLES LLP**

By: _____
         Danielle N. Riddles

Attorney for Plaintiff
BARBARA BARREDA